UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JANE DOE, a Minor, by and Through Jane Doe 2, Her Mother and Next Friend,

    Plaintiff,

  v.

TRICO COMMUNITY SCHOOL DISTRICT NO. 176, a corporation, DENNIS SMITH, JOHN DENOSKY, JERRY OHLAU and MICHAEL JENNINGS,

    Defendants.

Case No. 11-cv-586-JPG-PMF

# MEMORANDUM AND ORDER

This matter comes before the Court on the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 12) filed by defendants Trico Community School District No. 176 ("Trico"), Dennis Smith, John DeNosky, Jerry Ohlau and Michael Jennings. The Court has construed the motion as a motion for summary judgment under Federal Rule of Civil Procedure 56. After due warning that the Court would construe the motion as one for summary judgment, the plaintiff responded to the motion (Docs. 27 & 33), and the defendants replied to that response (Doc. 36). The defendants have also moved to strike paragraphs two and three of an affidavit in support of the plaintiff's response because it is not based on personal knowledge (Doc. 35). The plaintiff did not respond to the motion to strike.

The plaintiff, the mother of Jane Doe ("Jane"), a Trico student, brings this action in response to harassment of Jane by A.B., a fellow Trico student, on a school bus operated under Trico's authority.

**I.    Summary Judgment Standard**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396. This standard is applied with special scrutiny in cases that turn on issues of intent and credibility. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Where the moving party fails to meet its strict burden of proof, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e)(2); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Michas*, 209 F.3d at 692. Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252; *accord Michas*, 209 F.3d at 692.

## II.     Motion to Strike (Doc. 35)

The Court first addresses the defendants' motion to strike paragraphs two and three of the plaintiff's affidavit submitted in support of her response to the summary judgment motion.

Paragraph two is "[b]ased upon information and belief" and avers Trico's awareness of A.B.'s prior bullying of girls. Paragraph three is "[u]pon belief and personal knowledge" and avers the absence of any accusation that A.B. bullied boys. The affidavit does not set forth the affiant's basis for personal knowledge of Trico's awareness or of all accusations against A.B.

Rule 56(c)(4) provides, "An affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Affidavits made "upon information and belief" are insufficient to satisfy the personal knowledge requirement. *See Weiss v. Cooley*, 230 F.3d 1027, 1034 (7th Cir. 2000). Consequently, they cannot be used to oppose a motion for summary judgment. *See id.* Additionally, affidavits that fail to demonstrate the affiant's competence to testify as to the facts asserted therein may also be disregarded. *See Corder v. Lucent Techs. Inc.*, 162 F.3d 924, 927 (7th Cir. 1998).

Paragraphs two and three must be stricken and will not be considered in deciding the pending summary judgment motion. Paragraph two is expressly based "[u]pon information and belief," so it may not be used to oppose summary judgment. Paragraph three, although it claims to be made on personal knowledge, sets forth no basis for the affiant's competence to testify to its substance. Therefore, paragraphs two and three do not satisfy the requirements of Rule 56(c)(4) and will not be considered in opposition to the defendants' summary judgment motion. The Court will grant the defendants' motion to strike paragraphs two and three of the affidavit in support of the plaintiff's response (Doc. 35).

### III. Facts

The admissible evidence cited by the parties, viewed in the light most favorable to the

plaintiff, established the following relevant facts.

Jane and A.B. were female students at an elementary school within Trico's system. Defendant Jerry Ohlau was the principal of their school, and defendants Dennis Smith and then John DeNosky were the superintendents of the district. School officials believed that, although they lived next door to each other, Jane's and A.B.'s families did not get along.

A.  Harassment

In the fall of 2005, when Jane and A.B. were in the fourth grade, Jane told the plaintiff that A.B. had hit her and called her names on the school bus. The plaintiff reported the incident to Principal Ohlau and Superintendent Smith, but she did not attribute A.B.'s attacks to Jane's sex. Superintendent Smith told her he could not take disciplinary action until he had received three complaints.

Later, the plaintiff complained to Principal Ohlau and to Superintendent Smith that A.B. was repeatedly hitting Jane in the head with a book and a bookbag and was pinching her legs. Jane would get off the bus at the end of the day in tears and complaining of A.B.'s assaults. In her complaints to school officials, the plaintiff did not attribute A.B.'s attacks to Jane's sex. Jane was afraid to ride the school bus, so for the final three months of school, the plaintiff drove Jane to and from school every day.

On August 30, 2006, when Jane and A.B. were in the fifth grade, the plaintiff reported to Principal Ohlau that A.B. had pinched Jane on the arm and left a bruise. Again, she did not attribute the pinching to Jane's sex. In response, Principal Ohlau reviewed the videotape of the bus ride but could not detect the incident. He then talked to students who had been on the bus at the time and took disciplinary action against A.B.

On October 16, 2006, as A.B.'s six-year-old brother was walking down the aisle of the

4

bus, Jane tried to hit him as he walked past her. In turn, A.B., who was standing in the aisle immediately behind her brother and who saw Jane try to hit him, then hit Jane. Jane and A.B. got into a scuffle and tried to hit each other several more times before A.B. and her brother were able to get off the bus. The entire incident lasted less than thirty seconds, and neither Jane nor A.B. reported it to the bus driver. When Jane got off the bus at a later stop, she was crying and had a red mark on her forehead. She told the plaintiff that A.B. had repeatedly kicked and hit her on the bus.

The plaintiff immediately called Principal Ohlau to complain of A.B.'s treatment of Jane but again, she did not attribute A.B.'s attacks to Jane's sex. Principal Ohlau set up a meeting with the plaintiff and defendant Michael Jennings, the bus driver, later that afternoon and reviewed the videotape of the bus incident with them. After reviewing the tape, Principal Ohlau told the plaintiff that there would be a suspension based on the incident but that he would have to speak with Superintendent DeNosky, who had by then replaced Superintendent Smith, before deciding on the final action. In addition, the plaintiff asked Principal Ohlau to call in law enforcement.

After reviewing the tape the next day, Principal Ohlau and Superintendent DeNosky decided that both Jane and A.B. would serve detentions as punishment for the incident. They also reassigned the bus seats of Jane and A.B. so they would not sit next to each other and instructed school staff to monitor interactions between Jane and A.B. Principal Ohlau and Superintendent DeNosky also decided it was not necessary to call law enforcement.

When the Trico administration declined to call in law enforcement, the plaintiff called the Sheriff's Department herself on October 27, 2006. After Principal Ohlau showed the officer the video on October 30, 2006, the officer found that Jane had instigated the altercation, that she and

A.B. were "mutual combatants," that Jane did not appear injured in the video and that Jane had not immediately reported the incident to the bus driver. The officer took no further action.

Jane returned to school on October 23, 2006. Early in the afternoon, she told the plaintiff over the phone, "It's happening again," and asked the plaintiff to pick her up from school. The plaintiff picked Jane up, and Jane did not return to school after that day. The plaintiff reported to Principal Ohlau that A.B. had threatened Jane in the hallway. Principal Ohlau, who was present and watching Jane and A.B. at the time the plaintiff said the incident occurred, had not seen A.B. do or say anything to Jane. When Principal Ohlau investigated the incident, A.B., other students and the playground supervisors all reported that there had been no contact between Jane and A.B. He took no disciplinary action.

Before the October 16, 2006, bus incident, neither Principal Ohlau nor Jennings had known A.B. to harass or attack any student of any sex other than Jane or had received any reports that A.B. was harassing other girls in particular. The plaintiff did not complain to the school administration that A.B.'s treatment of Jane was based on Jane's sex until this lawsuit was filed.

B. Effect on Jane

On October 17, 2006, the day after the scuffle between Jane and A.B. on the bus, Jane's doctor diagnosed her with a contusion, bruises and a concussion. She suffered severe headaches and vomiting, had to take Tylenol and was required to stay home from school the rest of the week.

On October 24, 2006, the day after Jane returned to school and then left early, Jane's doctor referred her to a behavioral health clinic. There Jane worked with a counselor on a "safety plan" that would make her feel better about returning to school. On October 30, 2006, the plaintiff asked Superintendent DeNosky to implement the plan, but he refused, saying school

6

administrators did not always have to follow doctors' or counselors' recommendations. He was not willing to implement a new plan until it could be determined whether the actions the school had already taken would have any effect, and he could not determine this since Jane had only been back to school for a half-day since the October 16, 2006, bus altercation.

On November 20, 2006, the plaintiff appeared at a school board meeting, at which time the board informed her Jane did not qualify as a victim of bullying because she was not bullied by a group and was physically larger than A.B. The board told the plaintiff to have Jane back in school the following week or she would be considered truant.

Jane did not return, and her absences were considered unexcused. Since her extended absence had begun, Jane had been allowed to complete homework assignments at home and turn them in, but beginning December 14, 2006, Jane was no longer allowed to do this despite her doctor's and counselor's recommendation for "other alternatives" to attending school. In early 2007, Jane was diagnosed with posttraumatic stress disorder with comorbid depression and anxiety, problems which will require a lifetime of coping. Jane was eventually given an individualized education plan for students with special needs and was evaluated for special education services. Jane eventually resumed doing her homework assignments at home and began working with a tutor. However, Jane is still unable to participate in social activities such as summer camp and team sports and is often anxious and afraid.

 C. Litigation

In July 2011, the plaintiff filed this lawsuit in which she alleges claims under Title IX of the Civil Rights Act of 1964, 20 U.S.C. § 1681(a), for sex-based harassment (Count I), under 42 U.S.C. § 1983 for violation of Jane's Fourth Amendment right to be free of unreasonable search and seizure (Counts II, IV, VII, X & XIII), under state law for negligent infliction of emotional

distress (Counts III, VI, IX, XII & XV) and under state law for willful and wanton lack of sufficient supervision (Counts V, VIII, XI & XIV). In their motion, the defendants argue there is no basis for a Title IX action, there was no search or seizure, and the Illinois Tort Immunity Act, 745 ILCS 10/2-201, bars the state law claims. The plaintiff disagrees.

**IV. Analysis**

    A.    <u>Count I: Title IX</u>

The defendants are entitled to summary judgment on Count I, the plaintiff's claim under Title IX of the Civil Rights Act of 1964.

Title IX prohibits discrimination by federally-funded educational institutions on the basis of sex: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. . . ." 20 U.S.C. § 1681(a). This provision includes a prohibition on harassment on the basis of sex that creates a hostile school environment. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 281 (1998); *Franklin v. Gwinnett County Pub. Schs.*, 503 U.S. 60, 75 (1992).

Under Title IX, a school district that receives federal funds can be liable for sex-based student-on-student harassment if it knows about the harassment and is deliberately indifferent to it. *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 646-47 (1999). A school district is considered to be deliberately indifferent where its response – or lack of response – is "clearly unreasonable in light of the known circumstances." *Id.* at 648. The decision must be tantamount to an official decision not to remedy the situation. *See Gebser*, 524 U.S. at 290. Furthermore, to be liable, the harassment must be "so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the

school." *Davis*, 526 U.S. at 650. A threshold requirement to prevail on a Title IX claim is that the harassment must be based on sex and not personal animus or some other reason not of concern to Title IX. *See Burwell v. Pekin Cmty. High Sch. Dist. 303*, 213 F. Supp. 2d 917, 930 (C.D. Ill. 2002).

Based on the evidence in the record, there is no doubt that Trico receives federal funding for Title IX purposes and that Jane was harassed by A.B.. The defendants contest whether a reasonable jury could find that A.B.'s harassment of Jane was based on Jane's sex, whether the harassment was sufficiently pervasive, severe and objectively offensive, and whether Trico knew about and was deliberately indifferent to harassment based on sex. Because the Court believes that a reasonable jury could find that A.B.'s harassment of Jane played a causal role in her social and mental health problems and in her having to leave school, the Court focuses only on whether A.B.'s harassment was because of sex and whether Trico was deliberately indifferent.

1. Harassment Because of Sex

There is no evidence from which a reasonable jury could conclude that A.B. harassed Jane because of her sex. The nature of the abuse was not sexual, which is often implicitly considered to be sex-based. Instead, it was the kind of run-of-the-mill hitting and pinching that unfortunately occurs on elementary school busses all too often.

Nor is there any evidence that A.B. chose Jane as a victim because Jane was a girl. Outside of her individual attacks on Jane, A.B. had no history of attacking one sex more than the other. In fact, A.B. had no history of attacking *any other child* regardless of sex. The mere fact that Jane is a girl is not sufficient, by itself, to lead a reasonable jury to conclude that A.B. attacked her because of her sex. The only reasonable conclusion is that A.B. picked Jane because of some other reason like personal animus or, at least in one instance, because Jane harassed

9

A.B.'s brother first.

While A.B.'s harassment of Jane was unfortunate, it is simply not the kind of harassment against which Title IX protects because it was not based on Jane's sex.

    2.        Deliberate Indifference

There is also no evidence from which a reasonable jury could conclude that Trico was aware of harassment based on sex and was deliberately indifferent to it.

First, there is no evidence Trico personnel knew that A.B.'s harassment of Jane was based on Jane's sex. As noted above, the mere fact that the harassment occurred does not suggest that it was based on sex, and there are no other facts in the record that would have caused Trico personnel to believe that A.B.'s conduct toward Jane was based on anything other than personal animus. Indeed, Jennings and Principal Ohlau both believed there was preexisting personal animosity between the girls' families. Furthermore, neither Jane nor the plaintiff ever communicated to any of the defendants their opinion that the harassment was sex-based such that Trico might have suspected that as A.B.'s motivation. There is simply no evidence from which a reasonable jury could conclude that Trico was aware of sex-based harassment by A.B.

In addition, Trico's response to the harassment was not "clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648. Its response to the plaintiff's reports of A.B.'s harassment of Jane when they were in the fourth grade was not clearly unreasonable. The plaintiff did not report that the harassment was based on Jane's sex or that it was sexual in nature. Instead, the plaintiff's reports described the kind of "dizzying array of immature . . . behaviors by students," *id.* at 651 (internal quotations omitted), common in elementary schools. As the Supreme Court noted in *Davis*, "[A]t least early on, students are still learning how to interact appropriately with their peers. It is thus understandable that, in the school setting, students often

engage in insults, banter, teasing, shoving, pushing, and gender-specific conduct that is upsetting to the students subjected to it." *Id.* at 651-52. While it might not have been the wisest policy to wait until the third report of student-on-student harassment before taking action, as Superintendent Smith stated was Trico's policy, that policy was not clearly unreasonable in light of the numerous instances of immature behavior exhibited by elementary school children. Trico's response to the plaintiff's complaints while Jane was in fourth grade was certainly not clearly unreasonable and was not tantamount to an official decision not to remedy the situation.

As for the August 30, 2006, incident, after receiving the plaintiff's report that A.B. had pinched Jane, Principal Ohlau investigated the incident and disciplined A.B. This was not a clearly unreasonable response. That the discipline issued did not prevent further harassment by A.B. does not mean Trico's response was clearly unreasonable, for nothing in Title IX jurisprudence requires a defendant's response to *actually* remedy harassment so long as the response is not clearly unreasonable. *See Gabrielle M. v. Park Forest-Chicago Heights, Ill., Sch. Dist. 163*, 315 F.3d 817, 825 (7th Cir. 2003) (citing *Davis*, 526 U.S. at 648-49).

Similarly, Trico's responses to the October 16 and October 23, 2006, incidents were not clearly unreasonable. After the bus scuffle, Principal Ohlau and Superintendent DeNosky investigated the incident, determined Jane and A.B. were both at fault, and disciplined them both. They then reassigned Jane's and A.B.'s bus seats and directed school staff to monitor their interactions. After A.B.'s alleged threat to Jane in the hallway, Principal Ohlau investigated the incident and determined the plaintiff's report was unfounded. These responses were not clearly unreasonable.

Finally, Superintendent DeNosky's failure to implement the "safety plan" recommended by Jane's counselor and requested by the plaintiff was not clearly unreasonable. At that point,

11

the Trico administration had taken action to address the trouble between Jane and A.B. – separating them on the bus and instructing staff to monitor their interactions – and it was unclear whether that action would be successful in remedying the problem. Principal Ohlau was unable to substantiate the alleged October 24, 2006, threat in the hallway and Jane had not returned to school since then, so it was unclear whether the remedies implemented had worked. It is not clearly unreasonable to see if remedial actions are working before agreeing to take additional remedial actions.

In sum, there is simply no evidence from which a reasonable jury could find Trico personnel were deliberately indifferent to harassment of Jane by A.B. on the basis of Jane's sex.

For the foregoing reasons, the defendants are entitled to summary judgment on Count I.

B.  Count II: § 1983 Claim

The defendants are entitled to summary judgment on Count II, the plaintiff's claim under 42 U.S.C. § 1983 for violation of her Fourth Amendment right to be free from unreasonable search and seizure. As the defendants note, the plaintiff has alleged no search or seizure in her complaint and none is evident in the record.

The plaintiff assumes in her response that in Count II she actually pled a § 1983 claim for violation of the Equal Protection Clause of the Fourteenth Amendment, a claim with often accompanies a Title IX claim since the Supreme Court's decision in *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246, 258 (2009) ("Title IX was not meant to be an exclusive mechanism for addressing gender discrimination in schools, or a substitute for §1983 suits as a means of enforcing constitutional rights. Accordingly, we hold that §1983 suits based on the Equal Protection Clause remain available to plaintiffs alleging unconstitutional gender discrimination in schools."). She pled no such claim. However, had she pled an equal protection

claim, the Court would have rejected that claim.

In order to prove a § 1983 claim, a plaintiff must show that the defendant deprived the plaintiff of rights secured by the Constitution or laws of the United States. *Ienco v. City of Chi.*, 286 F.3d 994, 997-98 (7th Cir. 2002); *see Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *McKinney v. Duplain*, 463 F.3d 679, 683 -84 (7th Cir. 2006); *Brokaw v. Mercer County*, 235 F.3d 1000, 1009 (7th Cir. 2000). At issue in this case is Jane's equal protection rights. The Equal Protection Clause of the Fourteenth Amendment forbids any state to "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. Essentially, the clause guarantees "a right to be free from invidious discrimination in statutory classifications and other governmental activity." *Harris v. McRae*, 448 U.S. 297, 322 (1980).

In order to prove an equal protection claim, a plaintiff must show that a defendant has purposefully treated her differently from persons not in the protected group of the plaintiff. *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265 (1977); *Washington v. Davis*, 426 U.S. 229, 239-42 (1976). Where the plaintiff seeks to hold a defendant liable under § 1983 in his supervisory capacity for harassment on the basis of sex by someone under the defendant's control, as the plaintiff does here, she must still show that the supervisor intended to discriminate, not just that he turned a blind eye towards the purposeful discrimination of those under his control. *See T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1948-49 (2009)). Thus, a § 1983 claimant seeking to hold school personnel and a school district liable for harassment on the basis of sex requires evidence that the defendants knew about the harassment and facilitated, approved or condoned it. *See Trentadue v. Redmon*, 619 F.3d 648, 652 (7th Cir. 2010).

As discussed above, there is no evidence from which a reasonable jury could infer the

defendants knew A.B. was harassing Jane because of her sex and intended for that harassment on the basis of sex to take place. Thus, the plaintiff cannot establish the defendants' purposeful discrimination, an essential element of a §1983 claim for violation of equal protection rights.

    C.    <u>State Law Claims</u>

The Court declines to exercise jurisdiction over the remaining state law claims in this case. It is true that the Court continues to have supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367(a), which extends supplemental federal jurisdiction to all claims that are sufficiently related to the claims on which original jurisdiction is based so as to be part of the same case or controversy. However, § 1367(c)(3) provides that a district court "may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." A district court has broad discretion in deciding whether to decline jurisdiction over state law claims when no original jurisdiction claims remain pending. *RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*, No. 11-1268, 2012 WL 499043, *1 (7th Cir. Feb. 16, 2012). The district court should consider judicial economy, convenience, fairness and comity. *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "[W]hen the district court dismisses all federal claims before trial, the usual and preferred course is to remand the state claims to the state court unless there are countervailing considerations." *Payne v. Churchich*, 161 F.3d 1030, 1043 (7th Cir. 1998) (citing *Wright*, 29 F.3d at 1251). This is true even when the decision is on the eve of trial so long as the district court has not made a "substantial investment" of time in litigating the untried claims. *RWJ Mgmt.,* 2012 WL 499043 at *1.

The Court has considered the relevant factors and finds that it is appropriate not to exercise supplemental jurisdiction over the remaining claims in this case. The Court firmly

believes that Illinois state courts are far better equipped to hear cases that turn on the interpretation and application of state law between citizens of Illinois. As a matter of comity and efficiency, the privilege of hearing such cases should rest with the state court system. Furthermore, it would be no less convenient for the plaintiff to proceed in state court than in federal court, and the Court sees no unfairness that would result from litigation in a state forum. Finally, the Court notes that it has not made a substantial investment of time in resolving the state law claims; the vast majority of its efforts have focused on the federal question claims. Thus, the presumption to relinquish jurisdiction has not been overcome. For these reasons, the Court declines to exercise jurisdiction over the remaining claims in this case and will dismiss those claims without prejudice for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1367(c)(3).

## V. Conclusion

For the foregoing reasons, the Court:

- **GRANTS** the defendants' motion to strike (Doc. 35);

- **GRANTS in part** and **DENIES in part** the defendants' motion to dismiss, which has been construed as a motion for summary judgment (Doc. 12). The motion is **GRANTED** as to Counts I and II and **DENIED** as to Counts III through XV;

- **DISMISSES** Counts III through XV **without prejudice for lack of jurisdiction**; and

- **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED: March 2, 2012**

                                              s/ J. Phil Gilbert
                                              **J. PHIL GILBERT**
                                              **DISTRICT JUDGE**